## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | |
|---|---|
| **MILLICENT WILLIAMS,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) |
| | ) |
| **NICHOLAS NEWBERRY, in his** | ) |
| **individual capacity,** | ) |
| | ) |
| **OFFICER JOHN DOE, in his** | ) |
| **individual capacity,** | ) |
| | ) |
| **ST. LOUIS COUNTY,** | ) |
| | ) |
| **JON BELMAR, in his official capacity,** | ) |
| | ) |
| **and** | ) |
| | ) |
| **ST. LOUIS COUNTY BOARD OF** | ) |
| **POLICE COMMISSIONERS, in its** | ) |
| **official capacity,** | ) |
| | ) |
| **Defendants.** | ) |

## COMPLAINT FOR DAMAGES

COMES NOW Millicent Williams and, for her Complaint for Damages, hereby

states as follows:

### NATURE OF CLAIMS

1.      This is a Complaint for Damages, brought by Plaintiff Millicent Williams

against Defendants Nicholas Newberry and John Doe, two officers of the St. Louis

County, Missouri Police Department, and St. Louis County, a governmental entity,

arising from events, on or about April 2, 2019, during which Ms. Williams was subjected

to an unlawful traffic stop, unlawful detention, and unlawful searches of her person, vehicle, and personal property.  Ms. Williams brings claims herein against Defendants Newberry and Doe for violations of her rights, as secured by the Fourth and Fourteenth Amendments to the Constitution of the United States of America, to be free from unreasonable searches and seizures, cognizable pursuant to 42 U.S.C. §§ 1983 and 1988. Further, Ms. Williams brings claims herein for her damages and injuries suffered due to Defendant Newberry's unlawful touching of her person and intentional infliction of emotional distress, as recognized under Missouri common law.  Finally, Ms. Williams also brings claims herein against Defendant St. Louis County for maintaining unconstitutional patterns, practices, and customs of unlawfully subjecting motorists, such as and including Ms. Williams, for unlawful traffic stops and searches of their persons and vehicles based upon on their race and in the absence of lawful probable cause, under theories of municipal liability ("*Monell*" liability).

## PARTIES

2.      Plaintiff Millicent Williams (herein "Ms. Williams") is and was, at all times relevant hereto, a citizen of the United States of America and resident of St. Louis County, Missouri.

3.      Defendant Nicholas Newberry (herein "Defendant Newberry") is and was, at all times relevant hereto, a citizen of the United States of America and, with respect to the allegations contained herein, acting under color of state law as a lawfully empowered police officer of Defendant St. Louis County.  For purposes of Ms. Williams' federal

2

claims, brought pursuant to 42 U.S.C. §§ 1983 and 1988, Defendant Newberry is named in his individual capacity.

4.      Defendant John Doe is and was, with respect to the allegations contained herein, acting under color of state law as a lawfully empowered police officer of Defendant St. Louis County and/or attired in the uniform and bearing other indicia of Defendant St. Louis County.  On information and belief, Defendant John Doe's surname or last name is possibly Peterson or Pearson but Plaintiff has no present knowledge or information regarding Defendant John Doe's first name and/or his assigned designation ("DSN") number.  For purposes of Ms. Williams' federal claims, brought pursuant to 42 U.S.C. §§ 1983 and 1988, Defendant John Doe is named in his individual capacity.

5.      Defendant St. Louis County is a body politic, organized and existing pursuant to Missouri law.

6.      Defendant Jon Belmar (herein "Defendant Belmar") is and was, at all times relevant hereto, a citizen of the United States of America and acting under color of state law and in his capacity as the Chief of Police for Defendant St. Louis County.  Further, on information and belief, Defendant Belmar is and was, at all times relevant hereto, a final decision-maker with respect to the policies, practices, customs, and procedures of Defendant St. Louis County's police department.  For purposes of this litigation, Defendant Belmar is named in his official capacity.

7.      Defendant Board of St. Louis County Police Commissioners (herein "Defendant Police Commissioners") is a lawfully empowered governing body and/or agency for Defendant St. Louis County's police department and a final decision-maker

with respect to the policies, practices, customs, and procedures of Defendant St. Louis County's police department.  For purposes of this litigation, Defendant Police Commissioners is named in its official capacity.

## JURISDICTION AND VENUE

8.     Jurisdiction is proper to this Court, with respect to Millicent Williams' federal claims, pursuant to 28 U.S.C. §§1331 and 1343.  Further, this Court has supplemental jurisdiction to hear and decide Ms. Williams' state law claims, pursuant to 28 U.S.C. § 1367(a).

9.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), as Defendants are located, and the events giving rise to Ms. Williams' claims occurred, within the boundaries of this judicial district

## FACTUAL ALLEGATIONS

10.     Plaintiff Millicent Williams is a sixty-four (64) year-old, African-American female.

11.     On or about April 2, 2019 at approximately 2:00 a.m., Ms. Williams was returning home from DePaul Hospital, where her son had been admitted for medical treatment, and she was traveling westbound on Page Avenue in her 2017 Mercedes-Benz automobile.

12.     Upon reaching the intersection of Page Avenue and Westport Center Drive, located within St. Louis County and the 63146 zip code, Ms. Williams made a left-hand turn onto Westport Center Drive.

13.     In making her turn from Page Avenue onto Westport Center Drive, Ms. Williams was in compliance with all traffic ordinances, including use of her turn signal.

14.     As Ms. Williams was making her left-hand turn onto Westport Center Drive, she saw bright lights behind her, which she believed were from the high-beams of an automobile and/or possibly a spotlight.

15.     As the result of the brightness of the light, Ms. Williams could not, for some time, distinguish any details of the vehicle behind her.

16.     Defendant Newberry did not activate and/or continuously display his flashing emergency lights.

17.     Pursuant to Missouri law, a motorist is only required to stop for a police vehicle when such vehicle is displaying its emergency equipment, particularly its flashing red or red and blue lights.  *See* MO. REV. STAT., § 304.022

18.     Ms. Williams became concerned and fearful at the vehicle and bright lights behind her and activated her On-Star system to speak to an operator in order to notify them of where she was and to ask for assistance.

19.     While unknown to Ms. Williams with any certainty at the time, she later learned that the vehicle following behind her was a patrol car of Defendant St. Louis County being driven by Defendant Newberry.

20.     After she made her turn onto Westport Center Drive, Ms. Williams reduced her speed to approximately ten (10) miles per hour and activated her emergency hazard blinkers.

21.     In reducing her speed and activating her emergency hazard blinker, Ms. Williams did so to acknowledge her awareness and cooperation with the vehicle behind

5

her, in the event that it was a police car, or in hopes that the vehicle behind her would pass, in the event that it was not a police car.

22.     Ms. Williams did not, at any time, increase her speed or make any attempts to evade and/or flee the vehicle behind her.

23.     After turning onto Westport Center Drive, Ms. Williams immediately made a right-hand turn onto Lackland Road.

24.     In making her right-hand turn onto Lackland Road, Ms. Williams indicated her intention to turn onto Lackland Road with and through the use of her turn signal.

25.     The area in the vicinity of the intersections of Page Avenue and Westport Center Drive, Westport Center Drive and Lackland Road, and Lackland Road and Schuetz Avenue consists primarily of industrial parks and/or commercial office complexes.

26.     The area between the intersection of Lackland Road and Westport Center Drive and the next major intersection of Lackland Avenue and Schuetz Road is particularly dark at night with little vehicle traffic and few, if any, people in the area.

27.     There are and were few streetlights in the area of Westport Center Drive and Lackland Road and there are and were no open public places or businesses on those stretches of road at 2:00 a.m.

28.     Westport Center Drive is not a through street and either dead ends and/or loops back to the intersection of Westport Center Drive and Lackland Avenue.

29.     The next major intersection after Lackland Road and Westport Center Drive is located at the intersection of Lackland Road and Schuetz Road.

30.     In proceeding westbound on Lackland Road, Ms. Williams continued at her reduced speed of approximately ten (10) miles per hour with her emergency hazard blinkers activated.

31.     The vehicle, which had been following her since the intersection of Page Avenue and Westport Center Drive, continued to follow her onto Lackland Road.

32.     In continuing to follow Ms. Williams, the vehicle behind her, being driven by Defendant Newberry, continued to have its high beams and/or spotlight activated.

33.     While traveling westbound on Lackland Avenue, Ms. Williams did not see any flashing red or red and blue lights or any other indication that the vehicle behind her was a police or emergency vehicle.

34.     Due to the darkness and remoteness of the area and fact that she could not verify that the vehicle behind her was a police car, Ms. Williams was afraid to pull over on the side of the road or turn into any of the parking lots along Lackland Avenue.

35.     In continuing westbound on Lackland Road, Ms. Williams could see street lights and lighted areas ahead at the intersection of Lackland Road and Schuetz Road.

36.     Upon reaching the intersection of Lackland Road and Schuetz Road, Ms. Williams made a right-hand turn onto Schuetz Road, indicating her intention to turn with and through the use of her turn signal.

37.     After turning onto Schuetz Road, Ms. Williams immediately made a left-hand turn, indicating her intention to turn with and through the use of her turn signal, and into the parking lot of the 7-11 convenience store, located at 2107 Schuetz Road, St. Louis Missouri, 63146.

38.     The 7-11 convenience store, located at 2107 Schuetz Road, was the first lighted public area and open business that Ms. Williams had seen since the intersection of Page Avenue and Westport Center Drive.

39.     From where the vehicle behind her, being driven by Defendant Newberry, first started following her to the 7-11 convenience store, located at 2107 Schuetz Road, is approximately six-tenths (0.6) of a mile.

40.     Ms. Williams significantly reduced her speed and traveled the six-tenths (0.6) of a mile from where the vehicle first started following her to the 7-11 convenience store, located at 2107 Schuetz Road.

41.     Ms. Williams did not, at any time, make any attempts to increase her speed, flee, or evade the vehicle behind her in traveling the six-tenths (0.6) of a mile to the 7-11 convenience store, located at 2107 Schuetz Road.

42.     On information and belief, Defendant Newberry did not, at any time, continuously display his emergency lights during the sixth-tenths (0.6) of a mile between where he first started following Ms. Williams to the 7-11 convenience store, located at 2107 Schuetz Road.

43.     On information and belief, Defendant Newberry was familiar with the immediate area and was aware that the 7-11 convenience store, located at 2107 Schuetz Road, was one of the only, if not the only, well-lighted public areas and open businesses in the area at that time of night.

44.     Once on the parking lot of the 7-11 convenience store, located at 2107 Schuetz Road, Ms. Williamsstopped and parked her car the parking spot closest to the

8

door of the 7-11 convenience store and in the area of the parking lot with the brightest lighting, out of concern for her safety.

45.     The vehicle that had been following Ms. Williams pulled in immediately behind her and blocked her in to the parking spot.

46.     As she was parked, Ms. Williams observed Defendant Newberry, attired in the uniform of Defendant St. Louis County's police department, approaching her car.

47.     As he approached Ms. Williams' car, Defendant Newberry unsnapped the holster of his firearm and had his hand on his firearm as he walked towards the driver's door of her car.

48.     Ms. Williams was concerned and fearful as Defendant Newberry approached and placed both of her hands on her steering wheel.

49.     Defendant Newberry stated to Ms. Williams, "Don't you know you have to stop when you see a police officer?", or words to that effect.

50.     Ms. Williams attempted to explain that she was afraid to stop in the dark and remote areas and did stop in the first well-lighted public place and open business that see saw.

51.     Defendant Newberry told Ms. Williams to "Get your ass out of the car!", or words to that effect.

52.     Once Ms. Williams had exited her vehicle, Defendant Newberry pointed his finger in Ms. Williams' face and told her to "turn around, stretch out your arms, and spread your legs," or words to that effect.

9

53.     Defendant Newberry then touched and frisked Ms. Williams, feeling her arms, breasts, between her legs, and down her legs.

54.     Defendant Newberry forcibly handcuffed Ms. Williams.

55.     In handcuffing Ms. Williams, Defendant Newberry pulled firmly and roughly on her wrist and arm, causing her substantial pain.

56.     Defendant Newberry's anger and hostility, both in tone of voice and forceful actions, caused Ms. Williams to suffer such great fear that she involuntarily urinated on herself.

57.     Defendant Newberry forcibly dragged Ms. Williams to the rear of her car and told her to "sit your ass right there," or words to that effect, indicating the rear bumper of her car.

58.     It was difficult for Ms. Williams to comply with Defendant Newberry's order to sit on the bumper of her car, as her pants were soaked with her urine and she kept sliding forward.

59.     Defendant Newberry did not, at any time during this encounter, ask Ms. Williams to identify herself or show him any identification.

60.     As she was near the rear of Defendant Newberry's car, Defendant John Doe approached and stood near her.

61.     Defendant Newberry requested Ms. Williams' permission to search her car.

62.     Ms. Williams clearly and expressly refused Defendant Newberry's request for permission to search her car.

63.     As she stood with Defendant John Doe, near the rear bumper of Defendant Newberry's patrol car, Defendant Newberry proceeded to search the interior of Ms. Williams' car, including the front and back seats and under the seats.

64.     As Ms. Williams' was familiar with police procedures, due to the fact that her husband had approximately forty (40) years of service as a police officer for the City of St. Louis, Ms. Williams knew and/or reasonably believed that Defendants Newberry and John Doe lacked legal justifications for detaining her and/or searching her car.

65.     To the extent that Defendants Newberry and/or John Doe provided any explanation to Ms. Williams for her detention and search of her car, they merely stated that Defendant Newberry thought she "swerved" while driving.

66.     After he had searched her car, Defendant Newberry returned to where Ms. Williams and Defendant John Doe were standing.

67.     Defendant Newberry had Ms. Williams' driver license with him.

68.     Defendant Newberry could have only obtained Ms. Williams' driver's license by searching through her purse and pocketbook and taking her driver's license from the plastic license holder slot in her pocketbook.

69.     Defendant Newberry told Defendant John Doe to "unleash" Ms. Williams, presumably meaning to remove the handcuffs.

70.     Neither Defendant Newberry nor Doe issued any citations to Ms. Williams.

71.     Neither Defendant Newberry nor Defendant John Doe conducted any field sobriety tests nor a breathalyzer test on Ms. Williams.

11

72.     Ms. Williams was detained by Defendants Newberry and/or John Doe for approximately forty (40) minutes to one (1) hour.

73.     Upon returning to her car, Ms. Williams discovered that Defendant Newberry had removed the contents of her glove compartment and armrest and strewn them in her car.

74.     Upon returning to her car, Ms. Williams discovered that Defendant Newberry had dumped and searched through the contents of her purse.

75.     Upon returning home, Ms. Williams slipped and fell on the concrete steps in her garage due to the fact that her shoes were wet and slippery from standing in her own urine.

76.     As a result of slipping and falling in her garage, Ms. Williams suffered injuries, including but not limited to her knee and shoulder, to such an extent as to require past and potentially ongoing medical treatments.

77.     At approximately 5:30 a.m., on or about April 2, 2019, Ms. Williams' husband observed two marked patrol cars of Defendant St. Louis County parked near and facing their residence as he was leaving for work.

78.     On information and belief, several high-ranking commanders of the St. Louis County Police Department and/or Bureau of Professional Standards recommended that Defendant Newberry be terminated as a result of his actions, of or about April 2, 2019, and his treatment of Ms. Williams.

79.     On information and belief, Defendant Police Commissioners rejected the recommendations of these high-ranking commanders but did impose some substantially

12

lesser discipline upon Defendant Newberry while allowing him to remain employed as a St. Louis County police officer.

80. In 2017, the Missouri NAACP issued a "travel advisory" warning African-American motorists to be careful while in Missouri because of the danger that their civil rights would not be respected during traffic stops.

81. According to the "2018 Vehicle Stops Executive Summary," issued by the Missouri Attorney General's Office, based on an analysis of total police stops, St. Louis County police were 80% more likely, in general, to stop African-American drivers as compared to white drivers.

82. According to that same 2018 report, when accounting only for St. Louis County drivers, St. Louis County police were 50% more likely to stop African-American drivers as compared to white drivers.

83. Since 2000, the earliest year that the Missouri Attorney General's Office began to track racial disparity, St. Louis County police have consistently stopped African-American drivers at a disproportional rate and higher rate than white drivers.

84. According to data released by the Missouri Attorney General's Office, that from approximately 2014 through 2019, reports of African-American drivers being pulled over at a disproportionately high rated compared to white drivers have only increased.

85. According to the data released by the Missouri Attorney General's Office, the 2018 disparity rate between African-American and white drivers is the highest recorded in almost two decades.

13

## LEGAL CLAIMS

***Count I – Unlawful Search and Seizure in Violation of the Fourth Amendment***

***Plaintiff Millicent Williams against Defendant Nicholas Newberry***

**(for her unlawful detention)**

86.     Ms. Williams hereby incorporates above-paragraphs 2 through 85, by reference and as if set forth fully herein.

87.     As secured and guaranteed by the Fourth Amendment to the Constitution of the United States of America, "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . ."

88.     As described herein, Defendant Newberry, while acting under color of state law and acting alone and in concert with others, deprived Plaintiff of her rights privileges and immunities as secured by the Fourth Amendment to the Constitution of the United States of America, by and including but not limited to subjecting her to a traffic stop without having an articulable reasonable suspicion justifying the stop and/or unreasonably detaining her for a period longer than necessary to effect any legitimate purpose he *may* have had for the stop.

89.     As a direct and proximate result of the conduct of Defendant Newberry, Ms. Williams has suffered and continues to suffer injuries and damages, including but limited to: infringements and deprivations of her constitutional rights; great fear for her liberty and security; pain of the mind as well as the body; humiliation and

14

embarrassment; fear and apprehension; depression, anxiety, and loss of enjoyment of life; loss of faith in her society; and consternation.

90.     The acts of Defendant Newberry, as described herein, were intentional, wanton, malicious, oppressive, reckless, outrageous, and/or callously indifferent to the rights of Ms. Williams, thus entitling her to an award of punitive damages against Defendant Newberry.

91.     As a result of Defendant Newberry's unlawful actions and infringements of her protected rights, Ms. Williams has been compelled to retain counsel in this matter and is therefore entitled to a recovery of attorneys' fees and legal costs pursuant to 42 U.S.C. § 1988.

WHEREFORE Plaintiff Millicent Williams respectfully prays that this Court enter judgment in her favor, under 42 U.S.C. §§ 1983 and 1988, against Defendant Nicholas Newberry, in his individual capacity, and award her any and all compensatory damages, pre-judgment interest, post-judgement interest, punitive damages, attorneys' fees, expenses, costs, and any other such relief to which she is entitled and that this Court deems just, appropriate, and consistent with the important purposes of 42 U.S.C. § 1983.

### *Count II – Unlawful Search and Seizure in Violation of the Fourth Amendment*
### *Plaintiff Millicent Williams against Defendant Nicholas Newberry*
### **(for the unlawful search of her person)**

92.     Ms. Williams hereby incorporates above-paragraphs 2 through 85, by reference and as if set forth fully herein.

93.     As secured and guaranteed by the Fourth Amendment to the Constitution of the United States of America, "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . ."

94.     As described herein, Defendant Newberry, while acting under color of state law and acting alone and in concert with others, deprived Plaintiff of her rights privileges and immunities as secured by the Fourth Amendment to the Constitution of the United States of America, by and including but not limited to subjecting her to an unreasonable and unlawful search of her person, during which Defendant Newberry touched Ms. Williams' body, arms, breasts, between her legs, and legs.

95.     As a direct and proximate result of the conduct of Defendant Newberry, Ms. Williams has suffered and continues to suffer injuries and damages, including but limited to: infringements and deprivations of her constitutional rights; great fear for her liberty and security; pain of the mind as well as the body; humiliation and embarrassment; fear and apprehension; depression, anxiety, and loss of enjoyment of life; loss of faith in her society; and consternation.

96.     The acts of Defendant Newberry, as described herein, were intentional, wanton, malicious, oppressive, reckless, outrageous, and/or callously indifferent to the rights of Ms. Williams, thus entitling her to an award of punitive damages against Defendant Newberry.

97.     As a result of Defendant Newberry's unlawful actions and infringements of her protected rights, Ms. Williams has been compelled to retain counsel in this matter and

16

is therefore entitled to a recovery of attorneys' fees and legal costs pursuant to 42 U.S.C. § 1988.

WHEREFORE Plaintiff Millicent Williams respectfully prays that this Court enter judgment in her favor, under 42 U.S.C. §§ 1983 and 1988, against Defendant Nicholas Newberry, in his individual capacity, and award her any and all compensatory damages, pre-judgment interest, post-judgement interest, punitive damages, attorneys' fees, expenses, costs, and any other such relief to which she is entitled and that this Court deems just, appropriate, and consistent with the important purposes of 42 U.S.C. § 1983.

### Count III – Unlawful Search and Seizure in Violation of the Fourth Amendment
### Plaintiff Millicent Williams against Defendant Nicholas Newberry
### (for the unlawful search of her vehicle and property)

98.     Ms. Williams hereby incorporates above-paragraphs 2 through 85, by reference and as if set forth fully herein.

99.     As secured and guaranteed by the Fourth Amendment to the Constitution of the United States of America, "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . ."

100.     As described herein, Defendant Newberry, while acting under color of state law and acting alone and in concert with others, deprived Plaintiff of her rights privileges and immunities as secured by the Fourth Amendment to the Constitution of the United States of America, by and including but not limited to subjecting her to an unreasonable

and unlawful search of her car, purse, pocketbook, and/or other personal property and possessions.

101.    As a direct and proximate result of the conduct of Defendant Newberry, Ms. Williams has suffered and continues to suffer injuries and damages, including but limited to: infringements and deprivations of her constitutional rights; great fear for her liberty and security; pain of the mind as well as the body; humiliation and embarrassment; fear and apprehension; depression, anxiety, and loss of enjoyment of life; loss of faith in her society; and consternation.

102.    The acts of Defendant Newberry, as described herein, were intentional, wanton, malicious, oppressive, reckless, outrageous, and/or callously indifferent to the rights of Ms. Williams, thus entitling her to an award of punitive damages against Defendant Newberry.

103.    As a result of Defendant Newberry's unlawful actions and infringements of her protected rights, Ms. Williams has been compelled to retain counsel in this matter and is therefore entitled to a recovery of attorneys' fees and legal costs pursuant to 42 U.S.C. § 1988.

WHEREFORE Plaintiff Millicent Williams respectfully prays that this Court enter judgment in her favor, under 42 U.S.C. §§ 1983 and 1988, against Defendant Nicholas Newberry, in his individual capacity, and award her any and all compensatory damages, pre-judgment interest, post-judgement interest, punitive damages, attorneys' fees, expenses, costs, and any other such relief to which she is entitled and that this Court deems just, appropriate, and consistent with the important purposes of 42 U.S.C. § 1983.

***Count IV – Unlawful Search and Seizure in Violation of the Fourth Amendment***

***Plaintiff Millicent Williams against Defendant John Doe***

**(for her unlawful detention)**

104.    Ms. Williams hereby incorporates above-paragraphs 2 through 85, by reference and as if set forth fully herein.

105.    As secured and guaranteed by the Fourth Amendment to the Constitution of the United States of America, "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . ."

106.    As described herein, Defendant John Doe, while acting under color of state law and acting alone and in concert with others, deprived Plaintiff of her rights privileges and immunities as secured by the Fourth Amendment to the Constitution of the United States of America, by and including but not limited to subjecting her to a traffic stop without having an articulable reasonable suspicion justifying the stop and/or unreasonably detaining her for a period longer than necessary to effect any legitimate purpose he *may* have had for the stop.

107.    As a direct and proximate result of the conduct of Defendant John Doe, Ms. Williams has suffered and continues to suffer injuries and damages, including but limited to: infringements and deprivations of her constitutional rights; great fear for her liberty and security; pain of the mind as well as the body; humiliation and embarrassment; fear and apprehension; depression, anxiety, and loss of enjoyment of life; loss of faith in her society; and consternation.

108.    The acts of Defendant John Doe, as described herein, were intentional, wanton, malicious, oppressive, reckless, outrageous, and/or callously indifferent to the rights of Ms. Williams, thus entitling her to an award of punitive damages against Defendant John Doe.

109.    As a result of Defendant John Doe's unlawful actions and infringements of her protected rights, Ms. Williams has been compelled to retain counsel in this matter and is therefore entitled to a recovery of attorneys' fees and legal costs pursuant to 42 U.S.C. § 1988.

WHEREFORE Plaintiff Millicent Williams respectfully prays that this Court enter judgment in her favor, under 42 U.S.C. §§ 1983 and 1988, against Defendant John Doe, in his individual capacity, and award her any and all compensatory damages, pre-judgment interest, post-judgement interest, punitive damages, attorneys' fees, expenses, costs, and any other such relief to which she is entitled and that this Court deems just, appropriate, and consistent with the important purposes of 42 U.S.C. § 1983.

*Count V – Unlawful Search and Seizure in Violation of the Fourth Amendment*

*Plaintiff Millicent Williams against Defendant John Doe*

**(for the unlawful search of her vehicle and property)**

110.    Ms. Williams hereby incorporates above-paragraphs 2 through 85, by reference and as if set forth fully herein.

111.    As secured and guaranteed by the Fourth Amendment to the Constitution of the United States of America, "[t]he right of the people to be secure in their persons,

20

houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . ."

112.    As described herein, Defendant John Doe, while acting under color of state law and acting alone and in concert with others, deprived Plaintiff of her rights privileges and immunities as secured by the Fourth Amendment to the Constitution of the United States of America, by and including but not limited to subjecting her to an unreasonable and unlawful search of her car, purse, pocketbook, and/or other personal property and possessions.

113.    As a direct and proximate result of the conduct of Defendant John Doe, Ms. Williams has suffered and continues to suffer injuries and damages, including but limited to: infringements and deprivations of her constitutional rights; great fear for her liberty and security; pain of the mind as well as the body; humiliation and embarrassment; fear and apprehension; depression, anxiety, and loss of enjoyment of life; loss of faith in her society; and consternation.

114.    The acts of Defendant John Doe, as described herein, were intentional, wanton, malicious, oppressive, reckless, outrageous, and/or callously indifferent to the rights of Ms. Williams, thus entitling her to an award of punitive damages against Defendant John Doe.

115.    As a result of Defendant John Doe's unlawful actions and infringements of her protected rights, Ms. Williams has been compelled to retain counsel in this matter and is therefore entitled to a recovery of attorneys' fees and legal costs pursuant to 42 U.S.C. § 1988.

WHEREFORE Plaintiff Millicent Williams respectfully prays that this Court enter judgment in her favor, under 42 U.S.C. §§ 1983 and 1988, against Defendant John Doe, in his individual capacity, and award her any and all compensatory damages, pre-judgment interest, post-judgement interest, punitive damages, attorneys' fees, expenses, costs, and any other such relief to which she is entitled and that this Court deems just, appropriate, and consistent with the important purposes of 42 U.S.C. § 1983.

### Count VI – Failure to Intervene to Protect Plaintiff Williams from Violations of her Constitutional Rights

### Plaintiff Millicent Williams against Defendant John Doe

116.    Ms. Williams hereby incorporates above-paragraphs 2 through 85, by reference and as if set forth fully herein.

117.    As described herein and at all times relevant hereto, Defendant John Doe, was a sworn police officer acting under color of state law and, as a sworn police officer acting under color of state law, Defendant John Doe had a duty to intervene and prevent other police officers and state officials from violating Ms. Williams constitutionally protected rights

118.    As described herein, Defendant Newberry, while acting under color of state law, individually and in concert with others, violated Ms. Williams' protected Fourth Amendment rights

119.    Defendant John Doe had reasonable opportunity to intervene to prevent the actions described herein, including but not limited to by raising objections to the unlawful

detention of Ms. Williams' and/or search of her automobile, purse, pocketbook, and/or personal possessions and property.

120.    Despite having both a duty and opportunity to intervene to prevent the unlawful and unreasonable acts of Defendant Newberry, Defendant John Doe failed to take any actions to prevent his fellow officer from engaging in violations of Ms. Williams protected rights.

121.    As a direct and proximate result of the conduct of Defendant John Doe, Ms. Williams has suffered and continues to suffer injuries and damages, including but limited to: infringements and deprivations of her constitutional rights; great fear for her liberty and security; pain of the mind as well as the body; humiliation and embarrassment; fear and apprehension; depression, anxiety, and loss of enjoyment of life; loss of faith in her society; and consternation.

122.    The acts of Defendant John Doe, as described herein, were undertaken intentionally, wantonly, maliciously, recklessly, outrageously and/or for purposes of the oppression of and/or callously indifferent to the rights of Ms. Williams, thus entitling her to an award of punitive damages against Defendant John Doe.

123.    As a result of Defendant John Doe's unlawful actions and infringements of her protected rights, Ms. Williams has been compelled to retain counsel in this matter and is therefore entitled to a recovery of attorneys' fees and legal costs pursuant to 42 U.S.C. § 1988.

WHEREFORE Plaintiff Millicent Williams respectfully prays that this Court enter judgment in her favor, under 42 U.S.C. §§ 1983 and 1988, against Defendant John Doe,

in his individual capacity, and award her any and all compensatory damages, pre-judgment interest, post-judgement interest, punitive damages, attorneys' fees, expenses, costs, and any other such relief to which she is entitled and that this Court deems just, appropriate, and consistent with the important purposes of 42 U.S.C. § 1983.

### Count VII – Municipal Liability for Unconstitutional Pattern, Practice, or Custom
### Plaintiff Millicent Williams against Defendant St. Louis County

124.    Ms. Williams hereby incorporates above-paragraphs 2 through 85, by reference and as if set forth fully herein.

125.    As described herein, Defendants Newberry and John Doe, while acting under color of state law and alone and in concert with others, deprived Ms. Williams of her rights, privileges, and immunities as secured by the Constitution of the United States of America, including but not limited to subjecting her to an unlawful traffic stop, unlawful detention, and unlawful search of her person, automobile, purse, pocketbook, and personal possessions and property.

126.    The misconduct of Defendants Newberry and John Doe of the St. Louis County Police Department, as described herein, was authorized by and undertaken pursuant to a practice and custom that what so widespread, well-known, and well-settled, as to constitute a standard operating procedure of Defendant St. Louis County, in that it is and was the regular practice and custom of Defendant St. Louis County and its police officers to routinely and disproportionately subject African-American drivers, such as Ms. Williams, to unlawful traffic stops, detentions during traffic stops, and searches during traffic stops, as compared to white drivers.

24

127.    The serious harms incurred by Ms. Williams were the direct consequence of the official practice and custom of Defendant St. Louis County.

128.    As a direct and proximate consequence of the acts of Defendant St. Louis County, Ms. Williams has suffered and continues to suffer damages in the form of, *inter alia*, deprivation of her constitutional rights as guaranteed under the Fourth and Fourteenth Amendments, cognizable pursuant to 42 U.S.C. § 1983.

129.    As the result of the actions of the individually-named Defendants and Defendant St. Louis County, Ms. Williams has suffered and continues to suffer damages in the form of, *inter alia*, deprivation of her constitutional rights and emotional distress.

130.    As a result of Defendant St. Louis County's unlawful actions and infringements of her protected rights, Ms. Williams has been compelled to retain counsel in this matter and is therefore entitled to a recovery of attorneys' fees and legal costs pursuant to 42 U.S.C. § 1988.

WHEREFORE Plaintiff Millicent Williams respectfully prays that this Court enter judgment in her favor, under 42 U.S.C. §§ 1983 and 1988, against Defendant St. Louis County, and award her any and all compensatory damages, pre-judgment interest, post-judgement interest, attorneys' fees, expenses, costs, and any other such relief to which she is entitled and that this Court deems just, appropriate, and consistent with the important purposes of 42 U.S.C. § 1983.

### Count VIII – Common Law Battery

### Plaintiff Millicent Williams against Defendant Nicholas Newberry

25

131.    Ms. Williams hereby incorporates above-paragraphs 2 through 85, by reference and as if set forth fully herein.

132.    Defendant Newberry intended to touch and/or have contact with Ms. Williams' person.

133.    Defendant Newberry touched and/or had contact with Williams' person.

134.    Defendant Newberry's touching and/or contact with Ms. Williams, her person, her body, her breasts, her legs, and between her legs was offensive.

135.    Ms. Williams has suffered damages as the direct and proximate result of Defendant Newberry's actions, including but not limited to: great fear for her liberty and security; pain of the mind as well as the body; humiliation and embarrassment; fear and apprehension; depression, anxiety, and loss of enjoyment of life; loss of faith in her society; and consternation.

136.    The acts of Defendant Newberry, as described herein, were undertaken intentionally, wantonly, maliciously, recklessly, outrageously and/or for purposes of the oppression of and/or callously indifferent to the rights of Ms. Williams, thus entitling her to an award of punitive damages against Defendant Newberry.

WHEREFORE Plaintiff Millicent Williams respectfully prays that this Court enter judgment in her favor and against Defendant Nicholas Newberry, for common law battery, and award her any and all compensatory damages, pre-judgment interest, post-judgement interest, punitive damages, attorneys' fees, expenses, costs, and any other such relief to which she is entitled and that this Court deems just and appropriate.

*Count IX – Common Law Intentional Infliction of Emotional Distress*

26

### *Plaintiff Millicent Williams against Defendant Nicholas Newberry*

137.    Ms. Williams hereby incorporates above-paragraphs 2 through 85, by reference and as if set forth fully herein.

138.    As described herein, Defendant Newberry actions in actions in stopping, detaining, touching Ms. Williams' person, and interacting her in such an abusive and terrorizing manner to cause her to involuntarily urinate on herself were extreme and outrageous.

139.    In undertaking these actions, Defendant Newberry acted intentionally and/or recklessly; knew and/or should have known that his actions would result in the infliction of emotional distress upon Ms. Williams; and acted with the motivation of inflicting such emotional distress.

140.    The conduct of Defendant Newberry, as complained of herein, was so outrageous in character and extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community.

141.    As a result of the conduct of Defendant Newberry, Ms. Williams has suffered extreme emotional distress, including suffering from one or more stress and/or anxiety-related mental health issues.

142.    The acts of Defendant Newberry, as described herein, were undertaken intentionally, wantonly, maliciously, recklessly, outrageously and/or for purposes of the oppression of and/or callously indifferent to the rights of Ms. Williams, thus entitling her to an award of punitive damages against Defendant Newberry.

WHEREFORE Plaintiff Millicent Williams respectfully prays that this Court enter judgment in her favor and against Defendant Nicholas Newberry, for common law intentional infliction of emotional distress, and award her any and all compensatory

damages, pre-judgment interest, post-judgement interest, punitive damages, attorneys'
fees, expenses, costs, and any other such relief to which she is entitled and that this Court
deems just and appropriate.

Respectfully submitted,

Mark J. Pedroli, MBE 50787
*PEDROLI LAW, LLC*
7777 Bonhomme Ave, Suite 2100
Clayton, Missouri 63105
314.669.1817
314-789.7400 Fax
Mark@PedroliLaw.com


Daniel J. Kolde, Bar 64965MO
P.O. Box 440344
St. Louis, Missouri 63144-9998
314.675.5383 (Telephone)
daniel.kolde.law@gmail.com


*ATTORNEYS FOR PLAINTIFF*